FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JAN 28 2005
JAMES W. McCORMACK, CLERK
By: DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION 4

ELSIE AKINS, ALICE BENNETT, JAMES BROWN, VIRGINIA BROWN, CHARLES CALLAHAN, MARGORIE CHRISTAIN, LARRY GILBERT, JESSIE GRIFFIN, MARY HARRIS and RAYMOND HATTON — PLAINTIFFS

V. — NO. 4-05 CV00000108 WRW

MERCK & CO., INC. — DEFENDANT

This case assigned to District Judge Wilson
and to Magistrate Judge Young

COMPLAINT

Come the Plaintiffs by and through their attorneys, Gary Eubanks & Associates, and for their complaint against the Defendant, Merck & Co., Inc., (hereinafter "Merck") a New Jersey corporation, alleges and states:

## I. PARTIES

1. Plaintiff Elsie Akins is a resident of Pulaski County, Arkansas. Plaintiff was prescribed, purchased and ingested Vioxx from September 2001, through November 2004, in Pulaski County, Arkansas.

2. Plaintiff Alice Bennett is a resident of Pulaski County, Arkansas. Plaintiff was prescribed, purchased and ingested Vioxx from October 2002, through September 2004, in Pulaski County, Arkansas.

3. Plaintiff James Brown is a resident of Pulaski County, Arkansas. Plaintiff was prescribed, purchased and ingested Vioxx from May 2000, through October 2004, in Pulaski County, Arkansas.

4. Plaintiff Virginia Brown is a resident of Saline County, Arkansas. Plaintiff was prescribed, purchased and ingested Vioxx from May 2001, through September 2004, in Pulaski



County, Arkansas.

5. Plaintiff Charles Callahan is a resident of Pulaski County, Arkansas. Plaintiff was prescribed, purchased and ingested Vioxx from February 2000, through October 2004, in Pulaski County, Arkansas.

6. Plaintiff Margorie Christian is a resident of Pulaski County, Arkansas. Plaintiff was prescribed, purchased and ingested Vioxx from January 2000, through December 2002, in Pulaski County, Arkansas.

7. Plaintiff Larry Gilbert is a resident of Faulkner County, Arkansas. Plaintiff was prescribed, purchased and ingested Vioxx from September 2001, through September 2004, in Pulaski County, Arkansas.

8. Plaintiff Jessie Griffin is a resident of Saline County, Arkansas. Plaintiff was prescribed, purchased and ingested Vioxx from March 2000, through October 2004, in Saline County, Arkansas.

9. Plaintiff Mary Harris is a resident of Pulaski County, Arkansas. Plaintiff was prescribed, purchased and ingested Vioxx from August 2002, through September 2004, in Pulaski County, Arkansas.

10. Plaintiff Raymond Hatton is a resident of Lonoke County, Arkansas. Plaintiff was prescribed, purchased and ingested Vioxx from 1999, through September 2004, in Lonoke County, Arkansas.

11. Defendant Merck, is a foreign corporation, with its principle place of business in Whitehouse Station, New Jersey, doing business in the State of Arkansas.

12. At all relevant times Merck itself, or by use of others, did research, develop,

manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, promote, advertise, warn and otherwise distribute Vioxx in interstate and international commerce including the State of Arkansas.

## II. JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). There is complete diversity of citizenship between Plaintiffs and Defendant.

14. The amount in controversy exceeds $75,000, exclusive of interest and costs, and attorney fees.

15. This is a claim by citizens of the State of Arkansas against a Defendant that is a foreign corporation that transacts business within the State of Arkansas.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III. FACTUAL BACKGROUND

17. Plaintiff Elsie Akins ingested Vioxx from September 2001, through November 2004, and sustained a myocardial infarction on or about March 18, 2004.

18. Plaintiff Alice Bennett ingested Vioxx from October 2002, through September 2004, and required coronary artery bypass surgery in May 2003, and coronary stents June 2004.

19. Plaintiff James Brown ingested Vioxx from May 2000, through October 2004, and required placement of coronary stents on or about October 13, 2004.

20. Plaintiff Virginia Brown ingested Vioxx from May 2001, through September 2004, and sustained a myocardial infarction on or about November 25, 2002.

21. Plaintiff Charles Callahan ingested Vioxx from February 2000, through October 2004, in Pulaski County, Arkansas and sustained a stroke in December 2003.

22. Plaintiff Margorie Christian ingested Vioxx from January 2000, through December 2002, and sustained a myocardial infarction on or about January 19, 2001.

23. Plaintiff Larry Gilbert ingested Vioxx from September 2001, through September 2004, and sustained a stroke in January 2004.

24. Plaintiff Jessie Griffin ingested Vioxx from March 2000, through October 2004, and sustained a stroke in November 2003.

25. Plaintiff Mary Harris ingested Vioxx from August 2002, through September 2004, and sustained a stroke on or about September 10, 2003 and a myocardial infarction on or about April 15, 2004.

26. Plaintiff Raymond Hatton ingested Vioxx from 1999, through September 2004, and sustained a myocardial infarction on or about August 29, 2002.

27. Vioxx (rofecoxib) is classified as a nonsteroidal anti-inflammatory drug (NSAID) with anti-inflammatory, analgesic and antipyretic properties. As such, it is indicated for pain, dysmenorrhea, osteoarthritis and rheumatoid arthritis. The earlier marketed NSAID products (i.e., ibuprofen, naproxen, etc.) are approved for similar indications.

28. Vioxx was approved by the U.S. Food and Drug Administration (hereinafter "FDA") in May 1999.

29. Vioxx is a cyclooxygenase-2 (COX-2) selective inhibitor and as such had a lower incidence of gastrointestinal upset and a lower ulcerogenic potential. However, inhibiting the COX-2 enzyme selectively causes an imbalance between prostacyclin (PGI) and thromboxane A-2 (TX A2). Because "TX A2 is a major compound in the clotting process, and is a potent platelet aggregator and vasoconstrictor," the resulting imbalance between PGI and TX A2 places patients

at an increased risk of thromboembolic events, primarily heart attacks and strokes. *The Merck Manual (16th ed. 1992).*

30. Merck, the maker of Vioxx, is also the publisher of *The Merck Manual* (16th ed. 1992), which includes the following definition: "Thromboxane A-2 is a major compound involved in the clotting process, and is a potent platelet aggregator and vasoconstrictor." This section of *The Merck Manual* was not included in the 17th edition, published 1999.

31. Merck-employed physicians, as well as industry leaders supported by Merck, have published on the subject of COX-2 induced inhibition of prostaglandin synthesis and TX A2, creating a pro-thrombotic state that places patients at an increased risk of heart attacks and strokes. See *Effects of Specific Inhibition of Cyclooxygenase-2 on Sodium Balance, Hemo-dynamics and Vasoactive Eiosanoids,* 289 (2) PHARMACOLOGY & EXPERIMENTAL THERAPEUTICS (May 1999).

32. In June of 2000, Merck submitted to the FDA a safety study called VIGOR (Vioxx Gastrointestinal Outcomes Research) that found an increased risk of serious cardiovascular events, including heart attacks and strokes, in patients taking Vioxx compared to patients taking naproxen. In the VIGOR study, analysis of the cardiovascular data by the Safety Monitoring Board focused and commented on "the excess deaths and cardiovascular adverse experiences in the Vioxx group compared to the naproxen group."

33. On September 17, 2001, the Division of Drug Marketing, Advertising, and Communication (DDMAC) issued the following warning letter to Merck; "*You (Merck) have engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the VIGOR study, and thus misrepresents the*

*safety profile for Vioxx.*"

34. In 2000, Merck spent $130 million on direct to consumer advertising.

35. In 2001, Merck spent $166 million on direct to consumer advertising.

36. An estimated 24 million people worldwide, including 13 million Americans, have been prescribed Vioxx.

37. Shari L. Targum, M.D. of the FDA, Division of Cardio-Renal Drug Products, in the February 1, 2001, Review of Cardiovascular Safety Database states: In analyzing adverse events in VIGOR, "it can be seen that . . . there is an increased risk of MI and stroke in the Vioxx group compared with naproxen; in the MI group, the 95% confidence interval is significant." "This analysis could lead one to conclude that naproxen . . . would be the preferred drug."

38. D.M. Mukherjee et al. in February 2001, after analyzing the data from the VIGOR study declared "it is mandatory to conduct a trial specifically assessing cardiovascular risk and benefit of these agents." Mukherjee DM, Nissen SE, Topol EJ. *Risk of cardiovascular events associated with selective COX-2 inhibitors.* JAMA 2001; 286: 954-9. Neither Merck nor the FDA acted on this recommendation by studying further the cardiovascular effects of patients on Vioxx.

39. Annual Vioxx sales exceeded $2.5 billion in 2003.

40. On September 30, 2004, Merck officially announced a voluntary withdraw of Vioxx from all markets worldwide in light of unequivocal results from a clinical trial demonstrating that Vioxx doubles the risk of heart attack and stroke for those who take the product long term. The company's decision is based on three-year data from a prospective, randomized, placebo-controlled clinical trial, APPROVe (Adenomatous Polyp Prevention on VIOXX)

41. Despite knowledge of both the general pharmacology related to Vioxx, and the specific cardiovascular risks demonstrated in the APPROVe and VIGOR studies, Merck has failed to initiate studies to investigate the cardiovascular risk associated with Vioxx.

## IV. TOLLING THE APPLICABLE STATUTES OF LIMITATIONS

42. Any applicable statutes of limitations have been tolled by Defendant's affirmative and/or intentional acts of concealment, suppression and denial of the facts as alleged herein. Plaintiffs have been kept ignorant of vital information essential to the pursuit of these claims without any fault or lack of diligence on their part. Plaintiffs could not reasonably have discovered the defective and dangerous nature of Vioxx prior to the recall September 30, 2004.

43. Defendant was and is under a continuing duty to disclose the true character, quality and nature of Vioxx to Plaintiffs. Defendant is estopped from relying on any statute of limitations defense because of its concealment of the true character, quality and nature of Vioxx. Defendant knew or should have known that this information was not available to the Plaintiffs but was crucial information needed to safeguard the health of those individuals who ingested Vioxx.

44. As a result of this concealment Plaintiffs were deprived of informed consent regarding their ingestion of a dangerous drug and were deprived of information necessary to make a risk benefit assessment.

## V. CLAIMS FOR RELIEF
### COUNT I. FRAUD AND DECEIT

45. Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the paragraphs above, and further allege:

46. Defendant had available research and medical studies which clearly indicated that its product caused increased risk of heart attacks and stroke. Defendant was under a duty to disclose this information to Plaintiffs, and refused to do so.

47. The misrepresentations and omissions were made deliberately, willfully, and maliciously to mislead Plaintiffs into reliance and action thereon.

48. Plaintiffs had no opportunity to determine that Defendant's representations were false and misleading, and that the representations included material omissions. Plaintiffs reasonably relied thereon to their substantial detriment and injury.

49. By reason of their reliance on Defendant's misrepresentation and omissions, Plaintiffs were gravely harmed by Defendant's product.

50. As a result of Plaintiffs' ingestion of Vioxx, Plaintiffs sustained a stroke or heart disease as more fully set out herein. In addition, Plaintiffs have suffered, and continue to suffer injuries, including but not limited to, pain, physical limitations, visual problems, parasthesias, paralysis and mental anguish.

51. Defendant is liable for punitive damages for its reckless and wanton or willful disregard for the public's safety in their concealment and denial of adverse events related to its drug Vioxx, all done to maximize sales and profit at the expense of the public's health and safety. Defendant knew or should have known, in light of the surrounding circumstances, that its conduct would naturally and probably result in damage and injury to Plaintiffs and others, yet they continued such conduct with malice or reckless disregard of the consequences from which malice may be inferred. Defendant is therefore liable for punitive and exemplary damages as provided by Arkansas law.

COUNT II. NEGLIGENCE

52. Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the paragraphs above, and further allege:

53. Defendant had a duty to the Plaintiffs to produce and sell a reasonably safe product in design and manufacture, and to warn of the dangerous and potentially deadly nature of Vioxx.

54. Defendant breached its duty of reasonable care to the Plaintiffs by the following acts and omissions:

a. The Defendant knew or should have known that the use of Vioxx leads to an increased risk of serious adverse health effects;

b. Defendant did not adequately test Vioxx prior to distribution and sales in the State of Arkansas;

c. Defendant continued to manufacture, market, distribute and sell Vioxx notwithstanding their knowledge of the drug's dangerous nature;

d. In marketing and selling Vioxx in the State of Arkansas Defendant failed to disclose the dangers and risks to the health of persons ingesting the drug;

e. Defendant failed to warn adequately of the adverse effects of Vioxx;

f. Defendant misrepresented in its advertisements, promotional materials and other materials among other things, the safety, potential side effects and efficacy of Vioxx;

g. Defendant designed and manufactured a drug which when used, leads to serious adverse health effects including, but not limited to, heart attacks

and strokes;

h. Otherwise failing to exercise ordinary care under the circumstances, especially where the circumstances involve the health hazards and health risks of ingesting Vioxx.

55. As a direct and proximate result of the carelessness, negligence, fault, silence, omission, and inaction of Defendant, Plaintiffs have suffered damages as set out below.

56. As a direct and proximate result of the fault of Defendant, Plaintiffs developed a stroke or heart disease, as more fully set out herein. In addition, Plaintiffs have suffered and continue to suffer injuries including, but not limited to, pain, physical limitations, visual problems, parasthesias, paralysis and mental anguish.

COUNT III. NEGLIGENCE PER SE

57. Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the paragraphs above and further allege:

58. Defendant had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Vioxx.

59. Defendant violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, et seq., related amendments and codes and federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations.

60. Plaintiffs, as purchasers, consumers and users of Vioxx, are within the class of persons the statutes and regulations described above are designed to protect and Plaintiffs'

injuries are the type of harm these statutes are designed to prevent.

61. Defendant's acts constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §331, and further constitute a breach of duty, subjecting Defendant to civil liability for all damages arising therefrom, under theories of negligence per se.

62. Defendant failed to meet the standard of care set by the following statutes and regulations, which were intended for the benefit of individuals such as Plaintiffs, making Defendant negligent per se:

a. The labeling lacked adequate information on the use of the drug Vioxx [21 C.F.R. §201.56(a) and (d)];

b. The labeling failed to provide adequate warnings of severe and disabling medical conditions including, heart attack and stroke and other adverse medical conditions as soon as there was reasonable evidence of their association with the drug [21 C.F.R. §201.57(e)];

c. There was inadequate information for patients concerning the safe and effective use of Defendant's drug [21 C.F.R. §201.57(f)(2)];

d. There was inadequate information regarding special care to be exercised by the doctor for safe and effective use of Defendant's drug [21 C.F.R. §201.57(f)(1)]; and

e. The labeling was misleading and promotional [21 C.F.R. §201.56(b)].

63. As a result of the above described statutory violations, Plaintiffs have sustained a stroke or heart disease and have suffered and continue to suffer injuries and damages as alleged

herein, including but not limited to, pain, physical limitations, visual problems, parasthesias, paralysis and mental anguish.

COUNT IV. STRICT LIABILITY

64. Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the paragraphs above, and further allege:

65. Defendant was engaged in the business of manufacturing, assembling, selling and otherwise distributing pharmaceutical products.

66. The pharmaceutical products were supplied by Defendant in a defective condition which rendered the drugs unreasonably dangerous and which defective condition was a proximate cause of the damages to Plaintiffs, as hereinafter described. As a result of this defective condition, Defendant is strictly liable to the Plaintiffs under the product liability laws of the State of Arkansas.

67. Specific defects believed and alleged to have existed in the product include, but are not limited to, the following:

a. Vioxx is unreasonably and unnecessarily harmful to the health of users.

b. Defendant had the technology to remove the dangerous properties of its drug or to reduce the potentially deadly nature of their drug, but failed to do so.

c. Defendant had the technology to reduce the level of dangerous chemicals in its product.

68. Defendant's product was expected to and did reach Plaintiffs without substantial change in the condition as manufactured, manipulated and sold by Defendants.

69. Plaintiffs consumed the drug in the manner in which the drug was intended to be used, that is, for personal consumption, causing and subjecting Plaintiffs to strokes and heart disease.

70. Plaintiffs were not aware of, and reasonably could not have discovered, the harmful effects of the Defendant's product.

71. Defendant's drug constitutes a product unreasonably dangerous for normal use due to its defective design, defective manufacture, and the Defendant's inadequate warnings to Plaintiffs.

72. As a direct and proximate result of the fault of the Defendant, Plaintiffs have developed strokes, or heart disease and have suffered and continue to suffer injuries and damages including, but not limited to, pain, physical limitations, parasthesias, paralysis and mental anguish.

COUNT V. BREACH OF EXPRESS WARRANTY

73. Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the paragraphs above, and further allege:

74. Defendant expressly warranted that Vioxx was safe and well-tolerated by patients studied.

75. Vioxx did not conform to these express representations because Vioxx is not safe and has serious adverse health effects, including life threatening effects.

76. As a direct and proximate result of the breach of said warranties, Plaintiffs suffered and will continue to suffer injury, harm and economic loss as alleged herein.

COUNT VI. BREACH OF IMPLIED WARRANTY

77. Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the paragraphs above, and further allege:

78. At the time Defendant marketed, sold, and distributed Vioxx for use by Plaintiffs, Defendant knew of the use of which Vioxx was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

79. Plaintiffs and their physicians reasonably relied upon the skill and judgment of Defendant as to whether Vioxx was of merchantable quality and safe and fit for its intended use.

80. Contrary to such implied warranty, Vioxx was not of merchantable quality or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above.

81. As a direct and proximate result of the breach of an implied warranty, Plaintiffs suffered and will continue to suffer injury, harm and economic loss as alleged herein.

COUNT VII. UNJUST ENRICHMENT

82. Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the paragraphs above, and further allege:

83. Defendant is the manufacturer, seller and/or supplier of the drug Vioxx.

84. Plaintiffs paid for Vioxx as a safe and effective treatment for the pain of arthritis.

85. Defendants accepted payment by the Plaintiffs for the purchase of Vioxx.

86. Plaintiffs did not receive a safe and effective treatment for the symptoms for which they paid.

87. It would be inequitable for the Defendant to keep this money where the Plaintiffs did

not in fact receive a safe and effective treatment for their arthritis. The inequities are such that Defendant would be unduly enriched if allowed to retain these funds, and hereby seeks, the disgorgement and restitution of Defendant's wrongful profits, revenue and benefits, to the extent, and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

COUNT VIII. MEDICAL MONITORING

88. Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the paragraphs above, and further allege:

89. As a direct proximate and foreseeable result of the Defendant's acts, Plaintiffs have been exposed to a hazardous substance and as a result suffers a significantly increased risk of contracting another serious injury or latent disease.

90. Plaintiffs' risk of contracting a serious injury or latent disease has increased significantly as compared to persons not exposed and/or the public at large.

91. Plaintiffs' increased risk makes periodic diagnostic medical examinations reasonably necessary. Monitoring and testing procedures exist which make the early detection of treatment of such injuries or disease possible and beneficial.

92. Plaintiffs seek a comprehensive medical monitoring program including:

a. Notification to Plaintiff of the potential harm from Vioxx;

b. Aiding in the early diagnosis and treatment of resulting injuries or latent disease through ongoing testing and monitoring of Vioxx users;

c. Echocardiograms, stress echocardiograms, exercise tolerance tests, EKGs, possible cardiac angiograms, and periodic CT or MRI brain scanning;

d. Funding for further studies of the long term effects of Vioxx;

e. Funding for research into possible cures and/or treatments for the detrimental effects of using Vioxx;

f. Publishing and otherwise disseminating all such information to Plaintiffs and their physicians.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment against the Defendant in favor of Plaintiffs and award the following relief:

1. For general damages in a sum in excess of the jurisdictional minimum of this Court;
2. Medical, incidental, hospital, and service expenses according to proof;
3. Loss of earnings and earning capacity;
4. Medical monitoring according to proof;
5. Pre-judgment and post-judgment interest as provided by law;
6. Full refund of all purchased costs paid by Plaintiffs for Vioxx;
7. Compensatory damages in excess of the jurisdictional minimum of the Court, according to proof;
8. Consequential damages in excess of the jurisdictional minimum of the Court, according to proof;
9. Punitive and exemplary damages;
10. Attorneys' fees, expenses, and costs of this action;
11. Bifurcation of the trial of this action on the separate issues of liability and

damages and;

12. Such further relief as this Court deems necessary, just and proper.

DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims so triable in this action.

Respectfully submitted,

GARY EUBANKS & ASSOCIATES
P.O. BOX 3887
LITTLE ROCK, ARKANSAS 72203-3887
(501) 372-0266

By: ______________________
William Gary Holt Ark. #81090
Attorney at Law